UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID DREYER AND KATHERINE STEWART, | § | |
| INDIVIDUALLY AND ON BEHALF OF OTHER | § | |
| EMPLOYEES SIMILARLY SITUATED | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-1212 |
| | § | |
| BAKER HUGHES OILFIELD OPERATIONS, INC., | § | |
| D/B/A BAKER HUGHES BUSINESS SUPPORT | § | |
| SERVICES, | § | |
|     *Defendant.* | § | |

## ORDER

This Fair Labor Standards Act (FLSA) collective action suit is before the court on defendant Baker Hughes Oilfield Operations's motion to compel. (Dkt. 34.) For the reasons that follow, the court denies the motion.

## Background

The plaintiffs in this case are former employees of Baker Hughes who worked in the company's Information Technology Department as part of the Enterprise Server Team between April 18, 2005 and the present. They claim that they were not paid overtime as required by the FLSA. In an earlier order, the court granted the plaintiffs' motion to conditionally certify their case as a collective action. (Dkt. 28.)

Baker Hughes contends that the plaintiffs are not similarly situated to each other and has indicated its intent to file a motion for decertification after sufficient

discovery has occurred. It also claims that the plaintiffs are not entitled to overtime pay because they fall within three FLSA exemptions: the administrative, computer employee, and highly compensated employee exemptions.

Whether the plaintiffs fall within one of these exemptions depends on the services the plaintiffs performed for Baker Hughes. At present, the parties disagree over what services the plaintiffs actually performed. They also disagree over the number of hours the plaintiffs worked and the nature of the work the plaintiffs performed during those hours.

In order to determine the plaintiffs' job duties and the nature and number of hours the plaintiffs worked, Baker Hughes served the plaintiffs with a set of interrogatories. Two of the interrogatories (Interrogatories #1 and #2) asked the plaintiffs for the names, addresses, and telephone numbers of subsequent employers for whom they had worked or applied to work. The plaintiffs refused to answer these interrogatories on the grounds of irrelevance. Another interrogatory (Interrogatory #4) asked the plaintiffs to itemize the number of hours they worked for Baker Hughes into two categories: (1) "on call" time and (2) other time. Baker Hughes defined "on call" time to include only time spent waiting for calls, not time actually spent responding to calls. The plaintiffs answered this interrogatory by producing unverified spreadsheets in which they divided their number of hours worked into two categories: (1) on call time and (2) total weekly

hours.

Unsatisfied by the plaintiffs' responses, Baker Hughes filed this motion to compel.

<u>Analysis</u>

**1. Spreadsheets Identifying On Call Hours**

After Baker Hughes filed this motion to compel, the parties agreed that the spreadsheets were responsive to Baker Hughes's interrogatory and the plaintiffs have provided verifications for them. Accordingly, this issue is now moot.

**2. Identities of Subsequent Employers, Actual and Prospective**

Under Federal Rule of Civil Procedure 26(b)(1), a party is entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the . . . identity and location of persons who know of any discoverable matter." According to Baker Hughes, it wants to know the identity of the plaintiff's actual and potential employers so that it can subpoena these third parties to produce documents, such as resumes and job applications, that the plaintiffs submitted describing their job duties at Baker Hughes. Such documents, argues Baker Hughes, might be relevant to its defenses that the plaintiffs are exempt and not similarly situated to each other. Should the case go to trial, Baker Hughes might also use the documents for impeachment purposes.

But plaintiffs have already produced the resumes they sent out, and these

3

resumes are most likely to contain the fullest descriptions of their job histories. Any job applicant inclined to exaggerate his or her experience or qualifications will do so in the resume, which is normally the first step in landing a job. There may well be later opportunities to gild the lily on a job application or during a job interview, but these are of secondary importance and unlikely to surpass the baseline job descriptions in the resume. For this reason, it would be unreasonably burdensome to put third party employers to the time and expense of digging through applications and personnel files on a quest for tiny grains of marginally useful information.

Baker Hughes has pointed the court to cases in which defendants were allowed to obtain resumes, job applications, interview notes, and similar documents from third-party employers of the plaintiffs. *See, e.g.*, *Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, 2007 WL 142110, at *3-4 (W.D.N.Y. Jan. 16, 2007); *Benavides v. Velocity IQ, Inc.*, No. 8:05-CV-1536-T-30, 2006 WL 680656, at *2 (M.D. Fla. Mar. 15, 2006). But those cases do not speak to the situation here, where the plaintiffs have already produced their resumes, the most likely source of useful information. Consequently, they offer no real guidance for this case, and the court declines to follow them.

## Conclusion

For the foregoing reasons, the court denies Baker Hughes's motion to

compel.

      Signed at Houston, Texas on March 5, 2009.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge